# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 15-671V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| JOHN THOMPSON and HUALI THOMPSON, *parents on behalf of J.C.T., a minor*, | * * * * | Special Master Jennifer A. Shah |
| Petitioners, | * * | |
| | * | Filed: July 30, 2025 |
| v. | * * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * * | |
| Respondent. | * * * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |

*Renée J. Gentry*, The Law Office of Renée J. Gentry, Washington, DC, for Petitioners;
*Catherine Elizabeth Stolar*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On June 29, 2015, John and Huali Thompson ("Petitioners") filed a petition on behalf of their son J.C.T., seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] ECF No. 1 ("Pet."). Petitioners originally alleged J.C.T. developed injuries, including global developmental delay, seizure disorder, and encephalopathy, as a result of the diphtheria, tetanus, and acellular pertussis ("DTaP") and *Haemophilus influenzae* type b

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

("Hib") vaccinations he received on July 7, 2012. *Id*. Petitioners later changed their allegation to claim that J.C.T. was injured by Pentacel,[3] PCV13,[4] and Rotateq[5] vaccinations, all of which were also given on July 7, 2012. Pet'r's' Pre-Hearing Br. at 21, ECF No. 106.

A Ruling on Entitlement was issued by former Special Master Katherine E. Oler on December 9, 2022, finding in favor of Petitioners. ECF No. 150. Specifically, Special Master Oler found that Petitioners demonstrated by a preponderance of evidence that the Pentacel vaccine J.C.T. received on July 7, 2012, caused a significant aggravation of pre-existing Dravet syndrome, entitling Petitioners to compensation. *Id*.

After the case entered the damages phase on December 9, 2022, Petitioners regularly filed additional medical records and documentation as the parties worked toward resolving damages. *See* ECF Nos. 151-262.

This case was reassigned to me on August 12, 2024. ECF No. 234. On July 29, 2025, Respondent filed a proffer on award of compensation recommending that Petitioners should be awarded a lump sum of $2,146,519.13 for the benefit of J.C.T., consisting of $321,045.13 for life care plan expenses in the first year after judgment; lost future earnings of $1,575,474.00; and $250,000.00 for pain and suffering. Proffer at 1 (ECF No. 263). Additionally, the proffer recommended an award of $74,080.17 for Petitioners' past unreimbursable expenses, and an amount sufficient to purchase an annuity contract for J.C.T.'s remaining life care plan items. ECF No. 263 ("Proffer"). The parties have no objection to the amount of the proffered award of damages. Proffer, fn. 1.

Based on the record as a whole, I find that Petitioners are entitled to an award as ordered below:

### 1. A Lump Sum

A lump sum payment of $2,146,519.13, which includes $321,045.13 for life care expenses expected to be incurred during the first year after judgment, $1,575,474.00 for lost earnings, and $250,000.00 for pain and suffering, to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement to Petitioners as guardian(s)/conservator(s) of the estate of J.C.T., for the benefit of J.C.T.

---

[3] The Pentacel vaccine consists of DTaP, IPV, and Hib components. *See* https://www.cdc.gov/vaccines/vpd/dtap-tdap-td/hcp/about-accine.html (Last accessed December 8, 2022). IPV is the polio vaccine. *See* https://www.cdc.gov/vaccine-safety/vaccines/polio.html (Last accessed July 30, 2025).

[4] PCV13, or Prevnar13, is a pneumococcal conjugate vaccine. *See* https://www.cdc.gov/vaccine-safety/vaccines/pneumococcal.html (Last accessed July 30, 2025).

[5] Rotateq is one of two available rotavirus vaccines. *See* https://www.cdc.gov/rotavirus/vaccines/index.html (Last accessed July 30, 2025).

### 2. A Lump Sum

A lump sum payment of $74,080.17, representing compensation for past unreimbursable expenses, to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement to Petitioners, John and Huali Thompson.

### 3. An Annuity

The remainder of damages shall be paid in the form of an annuity contract, which shall be purchased as soon as practicable after entry of judgment. The annuity contract will provide payments for the life care items contained in the life care plan, which items are described in section II.C and Appendix A of the July 29, 2025 Proffer, which is incorporated herein as if fully set forth. ECF No. 263. Accordingly, pursuant to 42 U.S.C. § 300aa-15(f)(4), Respondent shall purchase, and take ownership of, an annuity contract or contracts[6] from one or more life insurance companies, as described below:

Each life insurance company must meet the following criteria:

1. Have a minimum of $250,000,000 of capital and surplus, exclusive of any mandatory security valuation reserve; and

2. Have one of the following ratings from two of the following rating organizations:
   a) A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;
   b) Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;
   c) Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;
   d) Fitch Credit Rating Company, Insurance Company Claims-Paying Ability Rating: AA-, AA, AA+, or AAA.

Respondent shall purchase an annuity contract or contracts from the life insurance company or companies for the benefit of J.C.T., pursuant to which the life insurance company or companies will agree to make payments periodically to Petitioners or guardian(s)/conservator(s) of the estate of J.C.T., as described in section II.C and Appendix A of the July 29, 2025 Proffer.

This award represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a). In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment herewith.[7]

---

[6] To satisfy the conditions set forth herein, in Respondent's discretion, Respondent may purchase one or more annuity contracts from one or more life insurance companies.

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by jointly filing notice renouncing their right to seek review.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　**s/ Jennifer A. Shah**
　　　　　　　　　　　　　　　　　　　　　　　　Jennifer A. Shah
　　　　　　　　　　　　　　　　　　　　　　　　Special Master

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**

| | |
|---|---|
| JOHN and HUALI THOMPSON, parents, on behalf of J.C.T., a minor,  )<br>)<br>) | |
| Petitioners,  ) | No. 15-671V |
| ) | Special Master Shah |
| v.  ) | ECF |
| ) | |
| SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,  )<br>) | |
| Respondent.  ) | |

**RESPONDENT'S PROFFER ON AWARD OF COMPENSATION**

On June 29, 2015, John and Huali Thompson ("petitioners"), on behalf of their minor son, J.C.T., filed a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10 et seq., alleging that J.C.T. suffered "injuries, including global developmental delay, seizure disorder, and encephalopathy, resulting from adverse effects of DTaP and Hib vaccinations received on July 7, 2012." Petition at 1, ECF No. 1. On December 9, 2022, Special Master Oler issued a Ruling on Entitlement in favor of petitioners. ECF No. 152. Respondent now proffers the following regarding the amount of compensation to be awarded.[1]

---

[1] The parties have no objection to the amount of the proffered award of damages. However, respondent reserves his right, pursuant to 42 U.S.C. § 300aa-12(f), to seek review of the Special Master's December 9, 2022 Ruling on Entitlement, finding petitioners entitled to an award under the Vaccine Act. This right accrues following the issuance of the damages decision.

-1-

I.  **Items of Compensation**

    A.  Life Care Items

Respondent engaged life care planner M. Virginia Walton RN, MSN, FNP, CNLCP, and petitioners engaged Nancy J. Bond, M.Ed., CCM, CLCP, to provide an estimation of J.C.T.'s future vaccine-injury related needs. For the purposes of this proffer, the term "vaccine related" is as described in the Special Master's December 9, 2022 Ruling on Entitlement. All items of compensation identified in the life care plan are supported by the evidence and are illustrated by the chart entitled Appendix A: Items of Compensation for J.C.T., attached hereto as Tab A.[2] Petitioners agree.

    B.  Lost Future Earnings

The parties agree that based upon the evidence of record, J.C.T. will not be gainfully employed in the future. Therefore, respondent proffers that J.C.T. should be awarded lost future earnings as provided under the Vaccine Act, 42 U.S.C. § 300aa-15(a)(3)(B). Respondent proffers that the appropriate award for J.C.T.'s lost future earnings is $1,575,474.00. Petitioners agree.

    C.  Pain and Suffering

Respondent proffers that J.C.T. should be awarded $250,000.00 in actual pain and suffering. *See* 42 U.S.C. § 300aa-15(a)(4). Petitioners agree.

---

[2] The chart at Tab A illustrates the annual benefits provided by the life care plan. The annual benefit years run from the date of judgment up to the first anniversary of the date of judgment, and every year thereafter up to the anniversary of the date of judgment.

D.     Past Unreimbursable Expenses

Evidence supplied by petitioners documents their expenditure of past unreimbursable expenses related to J.C.T's vaccine-related injury. Respondent proffers that petitioners should be awarded past unreimbursable expenses in the amount of $74,080.17. Petitioners agree.

## II.   Form of the Award

The parties recommend that the compensation provided to J.C.T. should be made through a combination of lump sum payments and future annuity payments as described below, and request that the Special Master's decision and the Court's judgment award the following:[3]

A. A lump sum payment of $2,146,519.13, representing compensation for life care expenses in the first year after judgment ($321,045.13), lost future earnings ($1,575,474.00), and pain and suffering ($250,000.00), to be paid through an ACH deposit to petitioners' counsel's IOLTA account for prompt disbursement to petitioners as guardian(s)/conservator(s) of the estate of J.C.T., for the benefit of J.C.T. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of J.C.T.'s estate. If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of J.C.T., any such payment shall be made to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of J.C.T. upon submission of written documentation of such appointment to the Secretary. Further, if guardianship/conservatorship is no longer required under the laws of the state of Florida after J.C.T. has attained the age of

---

[3] Should J.C.T. die prior to entry of judgment, the parties reserve the right to move the Court for appropriate relief. In particular, respondent would oppose any award for future medical expenses, lost future earnings, and future pain and suffering.

-3-

majority, any such payment shall be paid to J.C.T. upon submission of written documentation of the termination of guardianship/conservatorship to the Secretary.

  B. A lump sum payment of $74,080.17, representing compensation for past unreimbursable expenses, to be paid through an ACH deposit to petitioners' counsel's IOLTA account for prompt disbursement to petitioners, John and Huali Thompson.

  C. An amount sufficient to purchase the annuity contract,[4] subject to the conditions described below, that will provide payments for the life care items contained in the life care plan, as illustrated by the chart at Tab A attached hereto, paid to the life insurance company[5] from

---

[4] In respondent's discretion, respondent may purchase one or more annuity contracts from one or more life insurance companies.

The parties further agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties and that no part of any annuity payments called for herein, nor any assets of the United States or the annuity company, are subject to execution or any legal process for any obligation in any manner. Petitioners and petitioners' heirs, executors, administrators, successors, and assigns do hereby agree that they have no power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise, and further agree that they will not sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

[5] The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

  a. A. M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

  b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

  c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

  d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

which the annuity will be purchased.[6] Compensation for Year Two (beginning on the first anniversary of the date of judgment) and all subsequent years shall be provided through respondent's purchase of an annuity, which annuity shall make payments directly to petitioners only so long as J.C.T. is alive at the time a particular payment is due. At the Secretary's sole discretion, the periodic payments may be provided to petitioners in monthly, quarterly, annual or other installments. The "annual amounts" set forth in the chart at Tab A describe only the total yearly sum to be paid to petitioners and do not require that the payment be made in one annual installment.

      1.      <u>Growth Rate</u>

Respondent proffers that a four percent (4%) growth rate should be applied to all non-medical life care items, and a five percent (5%) growth rate should be applied to all medical life care items. Thus, the benefits illustrated in the chart at Tab A that are to be paid through annuity payments should grow as follows: four percent (4%) compounded annually from the date of judgment for non-medical items, and five percent (5%) compounded annually from the date of judgment for medical items. Petitioners agree.

      2.      <u>Life-Contingent Annuity</u>

The petitioners will continue to receive the annuity payments from the Life Insurance Company only so long as J.C.T. is alive at the time that a particular payment is due. Written notice shall be provided to the Secretary of Health and Human Services and the Life Insurance Company within twenty (20) days of J.C.T.'s death.

---

[6] Petitioners authorize the disclosure of certain documents filed by the petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury

3. <u>Guardianship/Conservatorship</u>

No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of J.C.T.'s estate. If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of J.C.T., any such payment shall be made to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of J.C.T. upon submission of written documentation of such appointment to the Secretary. Further, if guardianship/conservatorship is no longer required under the laws of the state of Florida after J.C.T. has attained the age of majority, any such payment shall be paid to J.C.T. upon submission of written documentation of the termination of guardianship/conservatorship to the Secretary.

**III.  Summary of Recommended Payments Following Judgment**

A. Lump Sum paid to the court-appointed guardian(s)/conservator(s) of the estate of J.C.T. for the benefit of J.C.T.:   **$2,146,519.13**

B. Past unreimbursable expenses payable to petitioners:   **$   74,080.17**

C. An amount sufficient to purchase the annuity contract described above in section II. C.

---

Compensation Program System of Records, No. 09-15-0056.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

C. SALVATORE D'ALESSIO
Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Deputy Director
Torts Branch, Civil Division

COLLEEN C. HARTLEY
Assistant Director
Torts Branch, Civil Division

/s/ CATHERINE E. STOLAR
CATHERINE E. STOLAR
Trial Attorney
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box l46, Benjamin Franklin Station
Washington, D.C. 20044-0146
Tel: (202) 353-3299
Email: Catherine.Stolar@usdoj.gov

Dated: July 29, 2025

Appendix A: Items of Compensation for J.C.T.   Page 1 of 6

| ITEMS OF COMPENSATION | G.R | * | M | Lump Sum Compensation Year 1 2025 | Compensation Year 2 2026 | Compensation Year 3 2027 | Compensation Year 4 2028 | Compensation Year 5 2029 | Compensation Years 6-8 2030-2032 | Compensation Year 9 2033 | Compensation Year 10 2034 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Insurance Maximum Out of Pocket | 5% | | | 9,750.00 | 9,750.00 | 9,750.00 | 9,750.00 | 9,750.00 | 9,750.00 | 9,750.00 | |
| Medicare Part B Premium | 5% | | M | | | | | | | | 2,220.00 |
| Medicare Part B Deductible | 5% | | | | | | | | | | 257.00 |
| Medigap G | 5% | | M | | | | | | | | 7,014.00 |
| Medigap G (separated for funding) | 5% | | M | | | | | | | | 3,000.00 |
| Medicare Part D | 5% | | M | | | | | | | | 3,871.75 |
| Neurology | 5% | * | | | | | | | | | |
| Mileage: Neurology | 4% | | | 105.00 | 105.00 | 105.00 | 105.00 | 105.00 | 105.00 | 105.00 | 105.00 |
| Opthalmology | 5% | * | | | | | | | | | |
| Mileage: Opthalmology | 4% | | | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 |
| Orthopedist | 5% | * | | | | | | | | | |
| Mileage: Orthopedist | 4% | | | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 |
| Vagus Nerve Stimulator Replacement | 5% | * | | | | | | | | | |
| Vagus Nerve Stimulator Programming | 5% | * | | | | | | | | | |
| Physical Medicine and Rehabilitation | 4% | * | | | | | | | | | |
| Mileage:Physical Medicine and Rehabilitation | 4% | | | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 | 52.50 |
| Neuropsychology Evaluation | 4% | | | 3,500.00 | | | 3,500.00 | | | | |
| Neuropsychiatry | 5% | * | | | | | | | | | |
| Mileage: Neuropsychiatry | 4% | | | 315.00 | 315.00 | 315.00 | 315.00 | 315.00 | | | |
| Emergency Room | 5% | * | | | | | | | | | |
| Physician Evaluation - Emergency Department Visits | 5% | * | | | | | | | | | |
| Dental Prophylaxis | 4% | | | 454.00 | 454.00 | 454.00 | 454.00 | 454.00 | 454.00 | 469.00 | 469.00 |
| Serum Studies | 5% | * | | | | | | | | | |
| Depakote Levels | 5% | * | | | | | | | | | |

Appendix A: Items of Compensation for J.C.T.                                        Page 2 of 6

| ITEMS OF COMPENSATION | G.R | * | M | Lump Sum Compensation Year 1 2025 | Compensation Year 2 2026 | Compensation Year 3 2027 | Compensation Year 4 2028 | Compensation Year 5 2029 | Compensation Years 6-8 2030-2032 | Compensation Year 9 2033 | Compensation Year 10 2034 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Electroencephalogram | 5% | * | | | | | | | | | |
| 24 Hour Electroencephalogram | 5% | * | | | | | | | | | |
| MRI of Brain | 5% | * | | | | | | | | | |
| Care Coordination | 4% | | M | 5,250.00 | 5,250.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 3,750.00 | 3,750.00 |
| Divalproex | 5% | * | | | | | | | | | |
| Epidiolex | 5% | * | | | | | | | | | |
| Clonazepam | 5% | * | | | | | | | | | |
| Diastat Nasal | 5% | * | | | | | | | | | |
| Poly-Vi-Sol | 4% | | | 149.65 | 149.65 | 149.65 | 149.65 | 149.65 | 149.65 | 149.65 | 149.65 |
| Vitamin D3 | 4% | | | 24.45 | 24.45 | 24.45 | 24.45 | 24.45 | 24.45 | 24.45 | 24.45 |
| Viatmin B6 | 4% | | | 18.82 | 18.82 | 18.82 | 18.82 | 18.82 | 18.82 | 18.82 | 18.82 |
| Diapers | 4% | | | 2,447.44 | 2,447.44 | 2,447.44 | 2,447.44 | 2,447.44 | 2,447.44 | 2,447.44 | 2,447.44 |
| Wipes | 4% | | | 260.88 | 260.88 | 260.88 | 260.88 | 260.88 | 260.88 | 260.88 | 260.88 |
| Gloves | 4% | | | 623.48 | 623.48 | 623.48 | 623.48 | 623.48 | 623.48 | 623.48 | 623.48 |
| Mattress Pads | 4% | | | 107.85 | 107.85 | 107.85 | 107.85 | 107.85 | 107.85 | 107.85 | 107.85 |
| Lower Extremity Orthotic | 4% | * | | | | | | | | | |
| Adaptive Stroller | 4% | | | 4,461.76 | | | | | | | |
| Gait Belt | 4% | | | 15.49 | 5.16 | 5.16 | 5.16 | 5.16 | 5.16 | 5.16 | 5.16 |
| Adapted Bike | 4% | | | 2,068.95 | 258.62 | 258.62 | 258.62 | 258.62 | 258.62 | 258.62 | 258.62 |
| Manual Wheelchair | 4% | | | 525.00 | 87.50 | 87.50 | 87.50 | 87.50 | 87.50 | 87.50 | 87.50 |
| Maintenance | 4% | | | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 |
| Physical Therapy | 4% | * | | | | | | | | | |
| Occupational Therapy | 4% | * | M | 2,680.00 | 2,680.00 | | | | | | |
| Speech Therapy | 4% | * | M | 2,610.00 | 2,900.00 | 2,900.00 | | | | | |
| ABA Therapy - Behavior Analyst | 4% | | M | 5,400.80 | 5,486.40 | 5,486.40 | 5,486.40 | 5,486.40 | | | |
| ABA Therapy - Behavior Technician | 4% | | M | 29,626.56 | 11,704.32 | 11,704.32 | 11,704.32 | 11,704.32 | | | |
| Aquatic Therapy | 4% | | M | 2,250.00 | 2,125.00 | 2,125.00 | 2,125.00 | 2,125.00 | 2,125.00 | | |
| Certified Nursing Assistant | 4% | | M | 12,600.00 | 12,600.00 | 12,600.00 | 12,600.00 | | | | |

Appendix A:  Items of Compensation for J.C.T.    Page 3 of 6

| ITEMS OF COMPENSATION | G.R | * | M | Lump Sum Compensation Year 1 2025 | Compensation Year 2 2026 | Compensation Year 3 2027 | Compensation Year 4 2028 | Compensation Year 5 2029 | Compensation Years 6-8 2030-2032 | Compensation Year 9 2033 | Compensation Year 10 2034 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Licensed Practical Nurse - School Days | 4% | | M | 72,900.00 | 72,900.00 | 72,900.00 | 72,900.00 | 117,000.00 | 117,000.00 | | |
| Licensed Practical Nurse - Non-School Days | 4% | | M | 149,850.00 | 149,850.00 | 149,850.00 | 149,850.00 | 144,300.00 | 144,300.00 | | |
| Nursing Care Program Days | 4% | | M | | | | | | | 260,000.00 | 260,000.00 |
| Nursing Care Non-Program Days | 4% | | M | | | | | | | 179,400.00 | 179,400.00 |
| Day Program | 4% | | M | | | | | | | 35,000.00 | 35,000.00 |
| Residential Care | 4% | | M | | | | | | | | |
| Home Adaptations: Door Alarms | 4% | | | 130.00 | 26.00 | 26.00 | 26.00 | 26.00 | 26.00 | 26.00 | 26.00 |
| Home Adaptations: Grab Bars | 4% | | | 200.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Vehicle Adaptations: Turning Seat | 4% | | | 12,500.00 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 |
| Lost Future Earnings | | | | 1,575,474.00 | | | | | | | |
| Pain and Suffering | | | | 250,000.00 | | | | | | | |
| Past Unreimbursable Expenses | | | | 74,080.17 | | | | | | | |
| Annual Totals | | | | 2,220,599.30 | 282,472.90 | 279,042.90 | 279,642.90 | 302,092.90 | 284,587.18 | 494,827.18 | 501,439.93 |

Note: Compensation Year 1 consists of the 12 month period following the date of judgment.
Compensation Year 2 consists of the 12 month period commencing on the first anniversary of the date of judgment.
As soon as practicable after entry of judgment, respondent shall make the following payment to the court-appointed guardian(s)/ conservators(s) of the estate of J.C.T., for the benefit of J.C.T. for lost future earnings ($1,575,474.00),
pain and suffering ($250,000.00), and Yr 1 life care expenses ($321,045.13): $2,146,519.13.
As soon as practicable after entry of judgment, respondent shall make the following payment to petitioners, John and Huali Thompson, for past un-reimbursable expenses: $74,080.17.
Annual amounts payable through an annuity for future Compensation Years follow the anniversary of the date of judgment.
Annual amounts shall increase at the rates indicated in column "G.R." above, compounded annually from the date of judgment.
Items denoted with an asterisk (*) covered by health insurance and/or Medicare.
Items denoted with an "M" payable in 12 monthly installments at the discretion of respondent.

Appendix A:  Items of Compensation for J.C.T.                                Page 4 of 6

| ITEMS OF COMPENSATION | G.R | * | M | Compensation Years 11-15 2035-2039 | Compensation Year 16 2040 | Compensation Years 17-51 2041-2075 | Compensation Years 52-Life 2076-Life |
|---|---|---|---|---|---|---|---|
| Insurance Maximum Out of Pocket | 5% | | | | | | |
| Medicare Part B Premium | 5% | | M | 2,220.00 | 2,220.00 | 2,220.00 | 2,220.00 |
| Medicare Part B Deductible | 5% | | | 257.00 | 257.00 | 257.00 | 257.00 |
| Medigap G | 5% | | M | 7,014.00 | 7,014.00 | 7,014.00 | |
| Medigap G (separated for funding) | 5% | | M | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Medicare Part D | 5% | | M | 3,871.75 | 3,871.75 | 3,871.75 | 3,871.75 |
| Neurology | 5% | * | | | | | |
| Mileage: Neurology | 4% | | | 105.00 | 105.00 | | |
| Opthalmology | 5% | * | | | | | |
| Mileage: Opthalmology | 4% | | | 52.50 | 52.50 | | |
| Orthopedist | 5% | * | | | | | |
| Mileage: Orthopedist | 4% | | | 26.25 | 26.25 | | |
| Vagus Nerve Stimulator Replacement | 5% | * | | | | | |
| Vagus Nerve Stimulator Programming | 5% | * | | | | | |
| Physical Medicine and Rehabilitation | 4% | * | | | | | |
| Mileage:Physical Medicine and Rehabilitation | 4% | | | 52.50 | 52.50 | | |
| Neuropsychology Evaluation | 4% | | | | | | |
| Neuropsychiatry | 5% | * | | | | | |
| Mileage: Neuropsychiatry | 4% | | | | | | |
| Emergency Room | 5% | * | | | | | |
| Physician Evaluation - Emergency Department Visits | 5% | * | | | | | |
| Dental Prophylaxis | 4% | | | 469.00 | 469.00 | 469.00 | 469.00 |
| Serum Studies | 5% | * | | | | | |
| Depakote Levels | 5% | * | | | | | |

Appendix A: **Items of Compensation for J.C.T.**  Page 5 of 6

| ITEMS OF COMPENSATION | G.R | * | M | Compensation Years 11-15 2035-2039 | Compensation Year 16 2040 | Compensation Years 17-51 2041-2075 | Compensation Years 52-Life 2076-Life |
|---|---|---|---|---|---|---|---|
| Electroencephalogram | 5% | * | | | | | |
| 24 Hour Electroencephalogram | 5% | * | | | | | |
| MRI of Brain | 5% | * | | | | | |
| Care Coordination | 4% | | M | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 |
| Divalproex | 5% | * | | | | | |
| Epidiolex | 5% | * | | | | | |
| Clonazepam | 5% | * | | | | | |
| Diastat Nasal | 5% | * | | | | | |
| Poly-Vi-Sol | 4% | | | 149.65 | | | |
| Vitamin D3 | 4% | | | 24.45 | 24.45 | 24.45 | 24.45 |
| Viatmin B6 | 4% | | | 18.82 | 18.82 | 18.82 | 18.82 |
| Diapers | 4% | | | 2,447.44 | 2,447.44 | 2,447.44 | 2,447.44 |
| Wipes | 4% | | | 260.88 | 260.88 | 260.88 | 260.88 |
| Gloves | 4% | | | 623.48 | 623.48 | 623.48 | 623.48 |
| Mattress Pads | 4% | | | 107.85 | 107.85 | 107.85 | 107.85 |
| Lower Extremity Orthotic | 4% | * | | | | | |
| Adaptive Stroller | 4% | | | | | | |
| Gait Belt | 4% | | | 5.16 | 5.16 | 5.16 | 5.16 |
| Adapted Bike | 4% | | | 258.62 | 258.62 | 258.62 | 258.62 |
| Manual Wheelchair | 4% | | | 87.50 | 87.50 | 87.50 | 87.50 |
| Maintenance | 4% | | | 62.50 | 62.50 | 62.50 | 62.50 |
| Physical Therapy | 4% | * | | | | | |
| Occupational Therapy | 4% | * | M | | | | |
| Speech Therapy | 4% | * | M | | | | |
| ABA Therapy - Behavior Analyst | 4% | | M | | | | |
| ABA Therapy - Behavior Technician | 4% | | M | | | | |
| Aquatic Therapy | 4% | | M | | | | |
| Certified Nursing Assistant | 4% | | M | | | | |

Appendix A: Items of Compensation for J.C.T.    Page 6 of 6

| ITEMS OF COMPENSATION | G.R | * | M | Compensation Years 11-15 2035-2039 | Compensation Year 16 2040 | Compensation Years 17-51 2041-2075 | Compensation Years 52-Life 2076-Life |
|---|---|---|---|---|---|---|---|
| Licensed Practical Nurse - School Days | 4% | | M | | | | |
| Licensed Practical Nurse - Non-School Days | 4% | | M | | | | |
| Nursing Care Program Days | 4% | | M | 260,000.00 | 260,000.00 | | |
| Nursing Care Non-Program Days | 4% | | M | 179,400.00 | 179,400.00 | | |
| Day Program | 4% | | M | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| Residential Care | 4% | | M | | | 103,885.92 | 103,885.92 |
| Home Adaptations: Door Alarms | 4% | | | 26.00 | 26.00 | 26.00 | 26.00 |
| Home Adaptations: Grab Bars | 4% | | | 40.00 | 40.00 | 40.00 | 40.00 |
| Vehicle Adaptations: Turning Seat | 4% | | | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 |
| Lost Future Earnings | | | | | | | |
| Pain and Suffering | | | | | | | |
| Past Unreimbursable Expenses | | | | | | | |
| Annual Totals | | | | 501,413.68 | 501,264.03 | 165,513.70 | 158,499.70 |

Note: Compensation Year 1 consists of the 12 month period following the date of judgment.
Compensation Year 2 consists of the 12 month period commencing on the first anniversary of the date of judgment.
As soon as practicable after entry of judgment, respondent shall make the following payment to the court-appointed guardian(s)/ conservators(s) of the estate of J.C.T., for the benefit of J.C.T. for lost future earnings ($1,575,474.00),
pain and suffering ($250,000.00), and Yr 1 life care expenses ($321,045.13): $2,146,519.13.
As soon as practicable after entry of judgment, respondent shall make the following payment to petitioners, John
and Huali Thompson, for past un-reimbursable expenses: $74,080.17.
Annual amounts payable through an annuity for future Compensation Years follow the anniversary of the date of judgment.
Annual amounts shall increase at the rates indicated in column "G.R." above, compounded annually from the date of judgment.
Items denoted with an asterisk (*) covered by health insurance and/or Medicare.
Items denoted with an "M" payable in 12 monthly installments at the discretion of respondent.